## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

DONNA ROBERTS                  :
      Plaintiff         :
      v.                :
                   : C.A. #02-4037
PHILADELPHIA HOUSING AUTHORITY :
   et al.                      :
      Defendants        :

## O R D E R

    **AND NOW**, this      day of      2004,      , 2003, plaintiff's motion for leave to file a reply to defendants' answer to plaintiff's motion for attorneys fees is hereby granted.  The plaintiff shall file her reply within 14 days of the date of this Order.

                              **BY THE COURT:**

                              _____

                              **U.S. DISTRICT COURT JUDGE**

## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

DONNA ROBERTS      :
   Plaintiff      :
   v.        : C.A. #02-4037
PHILADELPHIA HOUSING AUTHORITY :
 et al.       :
   Defendants    :

## PLAINTIFF'S MOTION FOR LEAVE TO FILE A REPLY
### IN SUPPORT OF HER MOTION FOR ATTORNEYS FEES

1. On or about January 23, 2004 plaintiff filed her motion for attorneys fees in the above matter.

2. On or about February 9, 2004 defendants filed their response in opposition to the motion for attorneys fees.

3. Defendants' answer raised issues as to the appropriate hourly rate and as to the reasonableness of time spent on certain activities.

4. The plaintiff hereby seeks leave to reply to the objections and arguments raised by defendants. A copy of the plaintiff's proposed reply is attached hereto as Exhibit "I".

**WHEREFORE**, the plaintiff prays that this Honorable Court enter the attached order permitting the plaintiff to file her reply in support of her motion for attorneys fees in the above matter.

_Michael Donahue_

Michael Donahue, Esquire
Community Legal Services, Inc.
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3700
Counsel for Plaintiff

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONNA ROBERTS** | : |
| **Plaintiff** | : |
| v. | : **C.A. #02-4037** |
| **PHILADELPHIA HOUSING AUTHORITY** | : |
| **et al.** | : |
| **Defendants** | : |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S
### MOTION FOR LEAVE TO FILE A REPLY

## I. INTRODUCTION

The plaintiff filed her motion for attorneys fees on or about January 23, 2004. Defendants filed their response on or about February 9, 2004, objecting to the hourly rate sought and objecting to some of the time entries.

The plaintiff, wishing to respond to the arguments raised by the defendants, now files her motion for leave to file a reply.

## II. DISCUSSION

Fed. R. Civ. Proc. 7(a) provides that the court may "order a reply to an answer." Generally, the rules should be liberally construed to allow a moving party to seek a court order to file a reply. *See*, Beckstrom v. Coastwise Line, 13 F.R.D. 480 (D.C. Alaska 1953).

In the instant matter, the plaintiff seeks leave of court to file a reply that would address the arguments and objections raised by the defendants in their answer to the plaintiff's motion for attorneys fees. These issues were not addressed in the plaintiff's memorandum in support of her motion for attorneys fees and plaintiff requests the opportunity to respond.

## III. CONCLUSION

In light of the above, the plaintiff requests that this Honorable Court grant her leave to file a reply in support of her motion for attorneys fees.

Michael Donahue, Esquire
Community Legal Services, Inc.
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3700
Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONNA ROBERTS          :
      Plaintiff      :
         v.        : C.A. #02-4037
PHILADELPHIA HOUSING AUTHORITY  :
  et al.          :
      Defendant    :

### AFFIDAVIT OF MICHAEL DONAHUE

I, Michael Donahue, hereby state under the penalties of perjury that the following information, made in support of the motion for award of attorney's fees in the above matter, is true and correct to the best of my knowledge, information and belief:

1. I am currently employed as a staff attorney at Community Legal Services, Inc., a non-profit corporation providing free legal services to indigent people. I have been employed by Community Legal Services, Inc. since September of 1987.

2. From December of 1977 through September of 1987, I was employed as a staff attorney at Delaware County Legal Assistance Association, Inc. also a non-profit corporation engaged in the business of providing free legal services to indigent people.

3. Since becoming employed at Community Legal Services, Inc., in September of 1987, I have handled an open and ongoing caseload of approximately 100 cases. Most of these cases have been in the public housing unit at Community Legal Services, Inc., a unit specializing in public housing and Section 8 assisted tenancy cases.

4. I have been a member of the Bar of the U.S. District Court for the Eastern District of Pennsylvania since 1978. During that time I have handled hundreds of matters of federal litigation.

5. As is more fully detailed in the attached hourly activity sheet, attached hereto as Exhibit "B1", I have spent 3.8 hours in preparing the plaintiff's reply and motion for leave to file a reply in the above matter.

6. Accordingly, a total of $2,820.00, plus additional reimbursement for any additional time, is sought for reasonable compensation for attorney's fees and costs for the plaintiff's successful prosecution of this case, including the full prosecution of the plaintiff's claim for attorneys fees.

Michael Donahue, Esquire
Community Legal Service, Inc.
1424 Chestnut Street
Philadelphia., PA 19102
215-981-3700
Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

DONNA ROBERTS              :
      Plaintiff           :
         v.               :  C.A. #02-4037
PHILADELPHIA HOUSING AUTHORITY   :
  et al.                  :
      Defendants      :

## O R D E R

**AND NOW**, this      day of      2004,        , 2003, Community Legal

Services, Inc. is hereby awarded attorneys fees and costs of $2,820.00 for the successful

prosecution of the above matter. Payment of these sums by the Philadelphia Housing Authority

to Community Legal Services, Inc. shall be made within 30 days of the date of this order.

                          **BY THE COURT:**

                       _____

                       **U.S. DISTRICT COURT JUDGE**

"I"

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

DONNA ROBERTS                          :
   Plaintiff                        :
   vs.                              : C.A. #02-4037
PHILADELPHIA HOUSING AUTHORITY,        :
  et al.                             :
   Defendants                       :

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
HER MOTION FOR ATTORNEYS FEES

## I. INTRODUCTION

The plaintiff filed her motion to determine the amount of attorneys fees on or about January 23, 2004. The defendants filed their response on or about February 9, 2004. Plaintiff now files her reply.

## II. DISCUSSION

### A. Plaintiff Was Wholly Successful

At pages 2 and 3 of their memorandum defendants argue that the plaintiff only achieved a limited success and, therefore, should not receive an award of attorneys fees. Defendants cite to Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Defendants' memorandum page 3. A review of the facts and holding in Farrar, *supra*, is instructive. In that case, the plaintiff sought $17 million dollars in compensatory damages pursuant to 42 U.S.C. §§ 1983 and 1985. Ultimately, a jury determined that the defendant had violated the plaintiff's civil rights, but this had not been the proximate cause of any damages suffered by the plaintiff. The plaintiff was awarded nominal damages of only $1.00. Holding that this relief did not materially alter the relationship between the parties, the Supreme Court reversed the plaintiff's award for attorneys fees.

In the instant case, the plaintiff's success from the filing of her motion to enforce was complete. As a result of filing her renewed motion for contempt and to enforce on June 17, 2003

1

she received payment of the attorneys fees on July 16, 2003. As a further result, she received payment of the interest in January of 2004, after the entry of the January 15, 2004 order in this matter. Accordingly, the plaintiff received everything that she sought. The relationship between the parties was changed in at least two ways in this matter. First, the January 15, 2004 required the defendants to pay interest to the plaintiff.

Secondly, the plaintiff enforced, in part, this Court's order of November 13, 2002 which required defendants to make payment of attorneys fees and interest by November 23, 2002. Some of that awarded interest was included in the sums received in July of 2003, more than seven months late.[1]

Moreover, there can be little doubt that the filing of the renewed motion for contempt caused the defendants to finally make payment of the attorneys fees and some interest in July of 2003. Payment of the $806.95 (which included both attorneys fees and interest) was, by stipulation, due to be received by May 10, 2003. That stipulation was entered into and approved by the Court on February 20, 2003. Thus, defendants had almost three full months within which to make the payment. Defendants were clearly aware of both the amount of that obligation and the date by which it was to be paid. When defendants failed to timely make that payment, counsel for plaintiff, by letter dated May 13, 2003, notified counsel for defendants that a renewed motion for contempt would be filed if payment was not received by June 12, 2003. When payment was still not received, the renewed motion for contempt was filed on June 17, 2003. In their answer to the renewed motion for contempt, the defendants admit that as of July 7, 2003, the check had not yet been processed. Paragraph 16 of defendants' answer to the renewed motion for contempt. These

---

[1]Pursuant to the original settlement stipulation in this action, defendants were required to pay $300 in attorneys fees by September 15, 2002. When defendants failed to do so and, after providing advanced written warning, the plaintiff filed her motion to enforce the settlement agreement on October 21, 2002. By order dated November 12, 2002, the Court ordered that defendants make payment of the $300.00 plus interest within ten days. More than two months later, on January 24, 2003, the defendants made payment of the $300.00, but not the interest. In fact, that interest was not paid until July of 2003--more than one month after the plaintiff filed her renewed motion for contempt, which, in part, sought payment of the interest pursuant to the November 12, 2002 order.

facts make clear that defendants only subsequently made payment of the funds because of the renewed motion for contempt.

At page two of their memorandum, defendants quote <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 103 S.Ct. 1933, 1937 (1983): "...a prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." To the extent that special circumstances exist in this matter, they weigh heavily against the defendants. Defendants made two separate agreements in this matter--the initial settlement and the settlement of the fee claim pursuant to the first motion for contempt. They kept neither agreement, despite having full notice of their obligations and ample time to carry them out. They have suffered two contempt orders. Defendants should suffer a full award of the attorneys fees claim in this matter, if for no other reason than to encourage them to alter their future conduct so as to avoid the use of judicial resources.

### B. Hourly Rate

The defendants suggest that "It is well settled in this jurisdiction that $300.00 per hour requested by Michael Donahue, Esquire, for these types of routine civil rights cases is excessive." Defendants' memorandum page 5. Without discussing the numerous cases cited in the plaintiff's memorandum in support of the motion for attorneys fees,[2] all of which found the CLS fee

_____

[2] Defendants also do not cite the many recent cases that have set plaintiff's counsel's hourly rate at an amount considerably in excess of $150.00. *See*, <u>Lydia Roldan v. PHA, et al.</u>, C.A. #95-6649 (E.D. Pa. 12/7/99) (Broderick, J.) (Hourly rate set at $265.00); <u>Dawson v. PHA, et al</u>, C.A. #98-2219 (E.D. Pa. 12/7/99) (Waldman, J.) (Hourly rate set at $265.00); <u>Deborah Jones v. PHA, et al.</u>, C.A. #99-0067 (E.D. Pa. 10/26/99) (Shapiro, J.) (Hourly rate set at $265.00); <u>Mary Cooper v. Philadelphia Housing Authority</u>, C.A. #99-1853 (E.D. Pa. September 4, 1999) (Katz, J.) (Hourly rate set at $265.00); <u>Elaine Janjanin v. Philadelphia Housing Authority</u>, C.A. #98-4878 (E.D. Pa. August 25, 1999) (DuBois, J.) (Hourly rate set at $225.00); <u>Joesahapha Small v. Philadelphia Housing Authority</u>, C.A. #97-5348 (E.D. Pa. June 25, 1999) (Yohn, J.) (Hourly rate set at $265.00); <u>Ella Mae Wesby v. Philadelphia Housing Authority</u>, C.A. #97-7403 (E.D. Pa. February 17, 1999) (Waldman, J.) (Hourly rate set at the then sought rate of $250.00); <u>Debra Bryant v. Philadelphia Housing Authority</u>, C.A. #97-7478 (E.D. Pa. February 17, 1999) (Joyner, J.) (Hourly rate set at the then sought $250.00); <u>Rhonda Smith v. Philadelphia Housing Authority</u>, C.A. #98-2874 (E.D. Pa. February 1, 1999) (Angell, M.J.) (Hourly rate set at $210.00); <u>Dorothy Hightower v. Philadelphia Housing Authority</u>, C.A #98-2753 (E.D. Pa. January 12, 1999) (Reuter, M.J.) (Hourly rate set at the then sought $250.00); <u>Vera Wallace v. Philadelphia Housing Authority</u>, C.A #95-4261 (E.D. Pa. May 22, 1996) (VanArtsdalen, J.)

schedule to be reasonable, defendants, instead, rely on a no longer valid line of cases wherein plaintiff's counsel's hourly rate was set at $150.00.[3] At page six of their memorandum defendants cite in support of their assertion Gwendolyn Smith v. Philadelphia Housing Authority, No. 94-1774 (3rd Cir. January 24, 1996).

Defendants' argument does not stand up to scrutiny. The defendants have ignored the most recent and relevant Third Circuit decision. In Maldonado v. Houstoun, 256 F.3d 181 (3rd Cir. 2001) the Third Circuit specifically determined that the CLS fee schedule is a fair reflection of the prevailing market rates in Philadelphia and that the schedule provided an adequate basis for meeting the plaintiff's burden of establishing a reasonable hourly rate. Maldonado, supra at 187. To the extent that prior District Court case law held differently, that case law is no longer valid.

Additionally, while Gwendolyn Smith, supra upheld an hourly rate of $150.00, that decision does not support the proposition that the hourly rate for plaintiff's counsel should be $150.00. In fact the opinion strongly suggests that the hourly rate should be higher:

> "Certainly, we do not interpret the district courts' orders as intimating any criticism of Mr. Donahue's professional abilities; indeed it seems clear that given his expertise, experience and rate of success, he could charge a significantly higher rate to a willing and able client."

Smith, et al. v. PHA, Nos. 94-17774, 95-1016, 95-1281, 95-1282, 95-1325, 95-1326 (3rd Cir. January 24, 1996) at page 7. (Copy attached). The Gwendolyn Smith decision is based upon a failure of appellants' counsel to meet the burden of proof in establishing his fair market rate.

---

(Hourly rate set at the then sought $210.00); and Lydia Roldan v. Philadelphia Housing Authority, C.A. #95-6649 (E.D. Pa. April 7, 1997) (Broderick, J.) (Hourly rate set at the then sought $210.00).

3Included in the string cite is Edward Smith v. Philadelphia Housing Authority, Mem.Op. No. 02-8861. That case involved the hourly rate for L. Kenneth Chotiner, Esquire and had nothing to do with Mr. Donahue's hourly rate. Mr. Chotiner is a former employee of the PHA legal department. He is currently in private practice and has never worked for Community Legal Services. He has approximately 20 years less legal experience than the instant plaintiff's counsel—and yet his hourly rate was set at $150.00.

In order to remedy this proof problem, a comprehensive study of attorneys fees rates was conducted by the firm of Altman, Weil, Pensa in order to insure that the CLS fee schedule accurately reflected the community market rates. At the time of <u>Smith</u>, CLS set its hourly rates based upon a survey that had been conducted by CLS itself.[4] The Altman, Weil survey is more recent, more comprehensive and clearly independent of CLS. CLS now sets its fees based upon the Altman, Weil survey. *See,* paragraphs 5 and 6 of the affidavit of Alan White, attached as Exhibit "B" to plaintiff's motion to determine the amount of attorneys fees.[5]

At page 6-7 of their memorandum defendants argue that the Altman, Weil, Pensa survey[6] "failed to provide any criteria concerning the types of work the responding firms did." Defendants obviously did not read the survey. The initial question of the Altman survey of 1996 rates was: "Does your firm distinguish between litigation specialties in establishing hourly rates for individuals in a litigation practice?" The overwhelming majority of respondents (77.5%)

---

[4]At page 6 of their memorandum, defendants cite to the case of <u>Evans v. PHA</u>, C.A. #93-5547 (E.D. Pa 1993) for the proposition that the CLS fee survey was not adequate evidentiary support of the appropriate market rate. At the time of <u>Evans</u>, the new and independent Altman, Weil, Pensa fee survey had not been performed. <u>Evans</u> is of no relevance to this court's decision. *See,* <u>Bryant v. Philadelphia Housing Authority</u>, C.A. #97-7478 (E.D. Pa. February 18, 1999) (Joyner, J.) and <u>Wesby v. Philadelphia Housing Authority</u>, #97-7403 (E.D. Pa. February 17, 1999) (Waldman, J). Further, at page 6 of their memorandum defendants argue that in <u>Evans</u>, *supra* "plaintiff did not produce any independent evidence that $250.00 per hour was reasonable for that type of action." In fact, in <u>Evans</u> counsel for plaintiff sought his then scheduled hourly rate of $210.00. Defendants' argument suggests a much deeper reduction in the hourly rate than that which actually occurred.

[5]A copy of the 1996 Altman, Weil survey is attached hereto as Exhibit "B3" to the affidavit of Alan White, attached as Exhibit "B" to the plaintiff's original motion for attorneys fees pursuant to the January 15, 2004 order in this mater and a copy of an updated Altman, Weil survey for 1998 is similarly attached hereto as Exhibit "B4".

[6]Also at page 5 of their memorandum defendants cite to the cases of <u>Evangeline Jones v. Philadelphia Housing Authority</u>, C.A. #98-6262, 1999 WL 238951 (E.D. Pa. May 12, 1999) and <u>Darlene Carr v. Philadelphia Housing Authority</u>, C.A. #97-6948 (E.D. Pa. August 9, 1999) for the proposition that the Altman survey has been rejected in this district. In fact, most of the cases cited in footnote 3, *supra*, approved the use of the Altman survey. <u>Evangeline Jones</u> and <u>Darlene Carr</u>, represent the distinct minority of the cases in this district on this issue. Both of these decisions were also entered without evidentiary hearing. It is the plaintiff's position that <u>Evangeline Jones</u> and <u>Darlene Carr</u> were wrongly decided.

responded "No". It is clear that the area of litigation specialty is simply not a factor in establishing an appropriate Philadelphia area market hourly rate.

The 1996 Altman survey included a cross-section of solo practitioners, small, medium and large firms. It included more than 40 firms and over 700 attorneys. The survey had rather obvious criteria: how many years had the attorneys been in practice and what hourly rates did they charge. This information was used to generate the fee schedule that is attached as Exhibit "B-2" to the plaintiff's motion to determine the amount of attorneys fees.

In addition, the hourly rate requested is also supported by two additional sources. The CLS fee schedule was approved by the CLS Board of Trustees, which is composed primarily of private attorneys appointed by the Chancellor of the Philadelphia Bar Association. The Board is a representative cross-section of the Philadelphia Bar. An affidavit of Alan White, Esquire, an attorney who is familiar with the Philadelphia area attorneys fees rates, was also attached to the motion for attorneys fees. That affidavit attests to the fact that the hourly rate sought in this matter is consistent with the Philadelphia area market rates, an allegation that was not contained in the supporting affidavit in Smith, *supra*. The Third Circuit has approved of similar affidavits as an appropriate method of establishing the appropriate market rate. Washington v. Philadelphia Cty. Ct. Of Common Pleas, 89 F.3d 1031, 1036 (3rd Cir. 1996).

Based upon the independent 1996 Altman, Weil, Pensa survey and the supporting affidavit, it is clear that the current CLS fee schedules are now closely pegged to the Philadelphia market rates and the plaintiff has provided competent evidence of his hourly rate.[7]

At page 7 of their memorandum the defendants characterize this matter as a "landlord tenant housing" matter. While this was not an unduly complicated matter, it was not a routine landlord tenant matter. It was a civil rights actions brought in federal court to enforce federal rights. *See*, Farley v. Philadelphia Housing Authority, 102 F.3d 697 (3rd Cir. 1996).

---

[7]The 1998 Altman survey, not surprisingly, reflected even higher hourly rates for the Philadelphia market than the 1996 survey.

Just as importantly the Altman survey clearly establishes that hourly rates are not set based upon the type of work. The first question of the 1996 survey (attached as Exhibit "B3" to the plaintiff's motion for attorneys fees) asked whether the responding firm distinguished between litigation specialties in establishing hourly rates. The overwhelming majority of respondents (77.5%) indicated that they did not do so. This evidence clearly establishes that the type of work is not a factor in establishing a Philadelphia community market hourly rate for litigation work.

At page 7 of their memorandum the defendants attempt to provide countervailing evidence by providing an affidavit from David Denenberg, Esquire "who specializes in landlord tenant housing matters." Defendants argue that Mr. Denenberg "represents both plaintiffs and defendants in landlord tenant matters" and that he "charges an hourly rate of $150.00." Plaintiff has obtained a supplemental and more accurate affidavit from Mr. Denenberg. A copy of that affidavit is attached hereto as Exhibit "A". In fact, Mr. Denenberg has 11 years less experience than counsel for plaintiff and has never represented any party in federal court on a matter involving either landlord tenant or civil rights issues. Most of Mr. Denenberg's work is confined to the Philadelphia Municipal Court, a forum that provides for the most summary of procedures, with simple preprinted form pleadings and a forum that does not allow for discovery. As a result, Mr. Denenberg charges $150.00 **per case** because most matters can be handled **in less than one hour**.

Defendants have not produced adequate countervailing evidence. While this lawsuit involved a landlord and a tenant, it was not a basic and simple "landlord/tenant type dispute". It involved the enforcement of federal civil rights conferred by federal law in federal court. Even assuming that defendants had produced some evidence to establish the "community rate for landlord tenant actions", it would be largely irrelevant. The standard to be applied is the community market rate of plaintiff's counsel and not that of an area of practice, especially an

area of practice in the Philadelphia Municipal Court where there are only simple form pleadings, no discovery and the most summary of procedure.[8]

At page 7 of their memorandum the defendants argue that the majority of the cases cited by plaintiff are "inopposite" (*sic.*) because those fee awards were "essentially unopposed". In fact, every case cited by the plaintiff was decided after extensive opposition by the defendants, necessitating rulings by those courts.

### C. Specific Hourly Objections

At page 8 of their memorandum defendants next dispute the 1.7 hours spent on the renewed motion (for contempt and[9]) to enforce. Defendants are wholly responsible for this time. Defendants' responsibilities under the settlement agreement were simple and clear. The time frame for defendants' action was also clear. When defendants failed to comply, they were given additional advance written warning before the renewed motion for contempt and to enforce was filed. The time spent on this activity was reasonable, justified and completely necessary.

At page 8 of their memorandum the defendants object to the .3 hours spent consulting the plaintiff as "unnecessary as the plaintiff did not sign the motion to enforce or have anything to do with the filing." Apparently, defendants believe that plaintiff's counsel should not abide by the Rules of Professional Responsibility. Eighteen minutes of consultation with a client with regard to the contempt issues in her case is neither inappropriate or unreasonable and, indeed, is absolutely necessary.

At page 8 of their memorandum, the defendants next object to the .3 hours reviewing PHA's answer to the (renewed motion for contempt and) to enforce "considering that PHA's response was basically, 'the checks (*sic.*) in the mail'...". PHA's four pages of exhibits to that answer are

---

[8]In the event that the Court finds plaintiff's evidence insufficient, the plaintiff has requested that a hearing be scheduled in order to provide further evidence of the appropriate community market rate for plaintiff's counsel.

9Defendants omit the language in parenthesis. Clearly, defendants do not want to call attention to the fact that plaintiff has been forced to file two contempt motions in this matter.

8

almost unfathomable. They include two copies of computer screens with the words "Order Stuff" at the top. The first is dated June 23, 2003 and appears to be a request for payment of $500.00. The second is dated June 4, 2003 and appears to be a request for payment of $6.95. There are two printed communications also attached as exhibits. They are undated. However, the second one does not seem to agree with the information contained on the printed computer screens. That second communication references a "req." was made on May 23, 2003. Neither computer screen bears that date. Especially in light of the somewhat contradictory exhibits, eighteen minutes was not an unreasonable amount of time for reviewing the defendants' answer to the renewed motion for contempt and to enforce.

At page 8 defendants next object to the one-half hour spent drafting a cover letter and a proposed settlement stipulation resolving the renewed motion for contempt and to enforce. In order to prepare that document, counsel for plaintiff had to review the hours spent in prosecuting the renewed motion for contempt and, calculate the fee claim. Then the stipulation and cover letter had to be drafted. Attempting to settle the fee claim was not an unreasonable task and the one-half hour was not an unreasonable amount of time.

Finally, at page 8 of their memorandum defendants object to the time spent drafting the motion for attorneys fees as "not necessary for the resolution of the renewed motion to enforce." Time spent preparing fee applications and negotiating and litigating fee claims is compensable. Durett v. Cohen, 790 F.2d 360 (3rd Cir. 1986); Shadis v. Beal, 703 F.2d 71 (3rd Cir. 1983); Bagby v. Beal, 606 F.2d 411 (3rd Cir. 1979); Planned Parenthood of Southeastern Pennsylvania, 869 F.Supp. 1190 (E.D. Pa. 1994). Additionally, the time spent was both reasonable and necessary.

### E. Plaintiff Should Receive Additional Fees

Counsel for plaintiff has been forced to spend an additional 3.8 hours to date drafting the motion for leave to file a reply and the reply memorandum. Counsel's affidavit detailing this time is attached to this memorandum as Exhibit "B". Undoubtedly, counsel will be forced to

spend additional time preparing for and conducting the hearing to determine the amount of attorneys fees. Counsel should be reimbursed for this additional time.

## III. CONCLUSION

In light of the above, the plaintiff prays for an award of attorneys fees as prayed for in the original motion, plus an award for any time that plaintiff's counsel has been forced to expend since the filing of that motion.


_____
Michael Donahue, Esquire
Community Legal Services, Inc.
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3700
Counsel for Plaintiff

I, David H. Denenberg, hereby state under the penalties of perjury that the following information is true and correct to the best of my knowledge, information and belief and that these statements are made subject to the penalties of perjury under the laws of the United States of America:

1.    I received a J.D. degree from Widener University Delaware Law School.    I have been licensed to practice in the State of Pennsylvania since 1987.

2.    I represent both landlords and tenants, primarily in the Philadelphia Municipal Court and on appeals from the Philadelphia Municipal Court proceedings in the Court of Common Pleas of Philadelphia County.

3.    I have never represented any party in a federal court matter involving any type of landlord/tenant dispute.

4.    I have never represented any party in a federal court matter involving civil rights issues.

5.    For Municipal Court Landlord-Tenant matters, I generally charge $150.00 per case since these matters can be resolved in less than one hour.

DATE: _11/4/99_____

DAVID H. DENENBERG

"A"

| **DATE** | **ACTIVITY** | **TIME** |
|---|---|---|
| 02/13/04 | Reviewed defendants' answer to motion for attorneys fees | .9 |
| 02/16/04 | Drafted proposed reply and motion for leave to file reply | 2.5 |
| 02/16/04 | Drafted supporting affidavit and attorney time and activity schedule | .2 |
| 02/17/04 | Service letter to Ciafre and certificate of service | .2 |
| | **TOTAL:** | **3.8** |

"B"

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 94-1774, 95-1016, 95-1281,
95-1282, 95-1325, 95-1326
_____

GWENDOLYN SMITH,
                    Appellant in No. 94-1774

                    vs.

PHILADELPHIA HOUSING AUTHORITY; FLOYD BAKER;
LEONARD LEFTWICH; DENNIS GLANCEY
          (D.C. Civil No. 94-cv-00147)
District Judge:  Honorable James McGirr Kelly


THERESA REID,
                    Appellant in No. 95-1016

                    vs.

PHILADELPHIA HOUSING AUTHORITY; SARA CRUZ;
JEROME BELL; CLAUDE ROSS
          (D.C. Civil No. 94-cv-06612)
District Judge:  Honorable Edmund V. Ludwig


RITA LEE,
                    Appellant in No. 95-1281

                    vs.

PHILADELPHIA HOUSING AUTHORITY; LINDA MOORE;
LEONARD LEFTWICH; CLAUDE ROSS
          (D.C. Civil No. 94-cv-06319)
District Judge:  Honorable J. Curtis Joyner

MINNIE JENKINS,
Appellant in No. 95-1282

vs.

PHILADELPHIA HOUSING AUTHORITY; ANTHONY HOLLAND;
JOHN VARALLO; CLAUDE ROSS
(D.C. Civil No. 94-cv-05475)
District Judge:  Honorable James McGirr Kelly


DANIELLE CLARK,
Appellant in No. 95-1325

vs.

PHILADELPHIA HOUSING AUTHORITY; PATRICIA SMITH;
JEROME BELL; DENNIS GLANCEY
(D.C. Civil No. 93-cv-04890)
District Judge:  James McGirr Kelly


JANIE EVANS,
Appellant in No. 95-1326

vs.

PHILADELPHIA HOUSING AUTHORITY; WILLIAM SANTIAGO;
JEROME BELL; DENNIS GLANCEY
(D.C. Civil No. 93-cv-05547)
District Judge:  Robert S. Gawthrop, III

---

Submitted Under Third Circuit LAR 34.1(a)
November 30, 1995
Before:  MANSMANN AND COWEN Circuit Judges and
PARELL, District Judge.*

Filed JAN 24 1996

---

*       Honorable Mary Little Parell of the United States
District Court for the District of New Jersey, sitting by
designation.

2

OPINION OF THE COURT

PER CURIAM

In these six consolidated appeals taken from district court orders awarding attorney's fees pursuant to 42 U.S.C. § 1988, we are asked to decide whether the district courts abused their discretion in lowering plaintiffs' counsel's requested hourly rate, thereby reducing the amount of the attorney's fees to the prevailing parties.

I.

In promulgating 42 U.S.C. §1988, Congress provided that: "In any action or proceeding to enforce a provision of section(s). . .1983. . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs". As the Supreme Court determined in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933 (1983), "(t)he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate". This calculation, or lodestar, provides an objective basis for the estimation of an attorney's reasonable fee which, at the discretion of the court, may be adjusted upward or downward as the circumstances dictate. The court may consider numerous subjective factors when adjusting the lodestar: 1) the time and labor required, 2) the novelty and difficulty of the

3

questions involved, 3) the skill requisite to perform the legal services properly, 4) the customary fee, 5) the amount involved and the results obtained, 6) the experience, reputation and the ability of the attorneys, 7) the "undesirability" of the case, and 8) awards in similar cases. <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974).

In petitioning the court for attorney's fees, the prevailing party has the burden of proving that the requested fee is consistent with the prevailing market rate. <u>Norman v. Housing Authority of City of Montgomery</u>, 836 F.2d 1292 (11th Cir. 1988). Such proof may consist of evidence in the form of affidavits of the plaintiff's attorney and other attorneys and rate determinations in other cases, if premised upon market evidence. <u>United Steelworkers of America v. Phelps Dodge Corp.</u>, 896 F.2d 403 (9th Cir. 1990). As we held in <u>Lindy Brothers Builders, Inc. v. American Radiator Standard Sanitary Corp.</u>, 487 F.2d 161 (3rd Cir. 1973), expert testimony is not required for this purpose. Once the burden of proof is met, should the non-prevailing party wish to challenge the requested rate, it must do so by providing evidence contradicting the legitimacy of the rate request. <u>United Steelworkers</u>, <u>supra</u>. If the non-prevailing party is unable to produce evidence to the contrary, then the prevailing party's evidence stands as uncontradicted and the district court may not overlook it. <u>Bell v. United Princeton Properties, Inc.</u>, 884 F.2d 713 (3rd Cir. 1989).

II.

In the cases before us, Michael Donahue, Esquire, who
is employed by Community Legal Services, Inc., represented each
of the plaintiffs as tenants in actions against the Philadelphia
Housing Authority pursuant to the United States Housing Act, 42
U.S.C. § 1437, and the Civil Rights Act, 42 U.S.C.§ 1983,
alleging that the Housing Authority failed to provide safe,
decent and sanitary housing in violation of these statutes.  Each
plaintiff prevailed and was entitled to reasonable attorney's
fees.  Mr. Donahue thus petitioned for attorney's fees; in each
case, he listed his rate for professional services as $210.00 per
hour.

As evidence to support his requested rate, Mr. Donahue
submitted his own affidavit setting forth his experience in
federal litigation, specifically housing litigation.  He also
submitted an affidavit from the Chair of the Attorneys Committee
of CLS in order to establish that Donahue's requested rate, as
determined according to the fee schedule utilized by CLS, was
consistent with prevailing market rates in the community.  Mr.
Donahue also introduced the CLS fee schedule according to which
the hourly rates for the CLS attorneys were set.

In addition, in the evidentiary hearings held in
Jenkins v. Philadelphia Housing Authority, No. 94-cv-5475 (E.D.
Pa., Mar. 10, 1995) (WESTLAW, Oct. File) and Evans v.
Philadelphia Housing Authority, No. 93-5547 (E.D. Pa., Mar. 31,
1995) (WESTLAW, Oct. File), the district courts considered the

market survey conducted by CLS upon which its fee schedule was
based.  The district courts, however, rejected the market survey
as insufficient supporting evidence on behalf of Mr. Donahue's
requested rate because the survey did not meet generally accepted
survey principles.  Jenkins; Evans, supra.  For example, the
survey did not include specifics as to the types of practices
included, there was no differentiation between the different
areas of law and there was no information contained in regard to
specific fees for each specialty or individual attorney.  Also,
the survey did not include fees for public interest attorneys and
government attorneys.  As a result, the district courts held that
the prevailing party did not meet its burden of proof to support
its requested rate of $210.00 per hour; the courts adjusted the
lodestar to $150.00 based upon the simplicity of the issues
involved, i.e., issues comparable to landlord/tenant matters
adjudicated in the state courts and the fact that because the
issues were not difficult or novel, a less senior attorney could
have adequately handled the cases.

        Our scope of review in determining whether the court
has abused its discretion with respect to the reasonableness of
the lodestar, is well settled:  ". . . review of the legal
standards . . . in calculating the lodestar is plenary . . .; we
will reverse factual findings only if they are clearly erroneous
. . . . "  Bell, 829 F.2d at 717.

        We held in Bell, supra, that a court may not reduce a
fee award if the issue was not raised by the opposing party.

6

Where, however, the petitioner is on notice of a defect and has the opportunity to respond -- both of which occurred here -- the court may proceed to resolve the matter. In any event, we also agree with the district courts that none of the prevailing parties met its burden of proving that the requested fee was consistent with the prevailing market rate. Therefore, despite the lack of initial party objection to the requested rate, the district court did not err in examining the requested rate.

In addition, we have carefully reviewed the affidavits, the fee schedule and the market survey and conclude that the courts did not err in setting Mr. Donahue's hourly rate, for the services performed at the time rendered, at $150.00 per hour. Certainly, we do not interpret the district courts' orders as intimating any criticism of Mr. Donahue's professional abilities; indeed it seems clear that given his expertise, experience and rate of success, he could charge a significantly higher rate to a willing and able client. For purposes of this appeal, however, we are constrained to hold that the district courts did not commit legal or factual error and that their orders are consistent with the sound exercise of their discretion.

III.

We will affirm the district court's order in each of the cases.

TO THE CLERK:

Please file the foregoing opinion.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

DONNA ROBERTS            :
     **Plaintiff**          :
           v.           : C.A. #02-4037
PHILADELPHIA HOUSING AUTHORITY  :
  et al.                 :
     **Defendants**       :

### CERTIFICATION OF SERVICE

Michael Donahue, Esquire, counsel for the plaintiff in the above matter, hereby certifies that

he served a copy of the foregoing plaintiff's motion for leave to file a reply in support of her

motion for attorneys fees in the above matter, upon the following parties, by letter dated February

17, 2004, mailed by first class mail, postage prepaid, to the following address:

Roger K. Ciafre, Esquire
Philadelphia Housing Authority
12 S. 23rd Street, Sixth Floor
Philadelphia, PA 19103
Counsel for Defendants

_____
Michael Donahue, Esquire
Community Legal Services, Inc.
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3700
Counsel for Plaintiff